KELLEY *v.* LACONIA LEVEE DISTRICT.

Opinion delivered February 11, 1905.

1. APPEAL—ACCEPTANCE OF BENEFITS UNDER DECREE.—One who accepts the benefit of so much of a decree as is favorable to him is not estopped thereby to appeal from the remainder of the decree, if the part accepted and that appealed from are independent. (Page 205.)

2. EVIDENCE—STATEMENTS OF LAND OFFICERS.—Statements of the register of the United States Land Office and of the Commissioner of the State Land Office that the records in their respective offices show that certain entries of lands were made, are inadmissible. (Page 205.)

3. OVERDUE TAX SALE—FAILURE TO CERTIFY SALE TO STATE.—Failure of the commissioner appointed under the overdue tax act of March 12, 1881, to certify to the proper county clerk the sale of certain lands to the State will not affect the validity of a subsequent grant of such lands by the State to a levee district. (Page 206.)

4. SAME—AMENDMENT OF RECORD.—An overdue tax sale was not invalidated by the entry of an order, between the day of sale and the confirmation, reciting that the decree did not speak the truth in the matter of attorney's fees, and directing that the proper fees be allowed. (Page 207.)

5. COMMISSIONER'S DEED—RECITALS.—Under Kirby's Digest, § 760, providing that deeds of conveyance by commissioners in chancery "shall be evidence of the facts therein recited," the deed of a commissioner in chancery is evidence of the facts recited therein, though he styled himself receiver as well as commissioner. (Page 208.)

6. PROBATE SALE—COLLATERAL ATTACK.—Delay of fourteen years after letters of administration were granted before application was made to the probate court for an order to sell lands cannot be set up to defeat the sale on collateral attack. (Page 209.)

Appeal from Phillips Chancery Court.

EDWARD D. ROBERTSON, Chancellor.

Judgment modified.

*Hill & Brizzolara,* for appellant.

Appellant's titles were sufficient to sustain the bill. 70 Ark. 256; 69 Ark. 102; 55 Ark. 286; 31 Ark. 528; 36 Ark. 471; 55 Ark. 286; 41 Ark. 21; 57 Ark. 289; 1 Green. Ev. 141, 721. The deeds of Kelley should have been admitted in evidence. Jones, Real Prop. § 252; Lawson, Presumptive Ev. 492; 50 Tex. 521; 9 S. W. 332; 2 A. K. Marsh. 70; 21 S. W. 267; 71 Tex. 122; 9 Johns. 169. Kelley's title to the Todd lands was sufficient. Sand. & H. Dig. § 725; 45 Ark. 49; 31 Ark. 74; 46 Ark. 375; 70 Ark. 88; 37 Ark. 155; 54 Ark. 65; 56 Ark. 633; 63 Ark. 405; 70 Ark. 185. The probate court is one of superior jurisdiction. 31 Ark. 83; 66 Ark. 418; 61 Ark. 23 Ark. 121; 24 Ark. 111; 31 Ark. 175; 11 Ark. 519; 49 Ark. 397; 52 Ark. 341; 81 S. W. 111; 22 Ark. 531; 58 Ark. 84; 101 Fed. 91. The taxes assessed were illegal. 56 Ark. 276; 66 Ark. 542; 56 Ark. 93; 61 Ark. 414; 63 Ark. 475; 61 Ark. 36; 68 Ark. 248. The overdue tax decrees were void. 66 Ark. 52; 55 Ark. 218; 65 Ark. 595; 68 Ark. 248; 61 Ark. 36; 70 Ark. 326; 55 Ark. 34; 43 Ark. 296; 53 Ark. 445; 35 Ark. 37; Black, Tax Tit. 180; 140 U. S. 634; 40 Ark. 35; 69 Ark. 102; 28 Ark. 304; 66 Ark. 49; 2 Blackw. Tax. Tit. § 700. Decrees in overdue tax suits may not be attacked collaterally for anything other than jurisdictional defects apparent from the record. 78 S. W. 749; 55 Ark. 30; 65 Ark. 595; 65 Ark. 419.

*F. M. Rogers,* for appellee.

Appellant must recover upon the strength of his own title. 110 U. S. 15; 121 U. S. 551; 8 Cranch, 462; 6 Pet. 95; 18 How. 263; 155 U. S. 404; 12 Ark. 296; 37 Ark. 647; 62 Ark. 439; 19 Ark. 603; 36 Ark. 456. The deeds relied upon by appellant were not sufficient to support the suit. 38 Ark. 187; 56 Ark. 633; 58 Ark. 580; 63 Ark. 405; 4 Pet. 1, 83; 1 Greenleaf, Ev. § 23; 41 Ark. 363; 20 Ark. 508; 22 Ark. 136; 39 Ark. 182; 45 Ark. 309; 28 Ark. 507; 60 Ark. 188; 31 Ark. 335; 32 Ark. 97; 42 Ark. 215; 23 Ark. 712, 720. Decrees in the overdue tax suits cannot be attacked collaterally. 53 Ark. 445; 66 Ark. 539; 45 Ark. 530.

*Rose, Hemingway & Rose,* for appellee.

The decrees in the overdue tax suits cannot be attacked collaterally. 11 Ark. 519; 49 Ark. 346; 78 S. W. 749; 55 Ark. 43; 57 Ark. 428; 55 Ark. 398; 50 Ark. 190; 55 Ark. 30; 50 Ark. 191;

19 Ark. 499; 53 Ark. 113. A sale is complete when confirmed by the court and the purchase price has been paid. Freeman, Void Jud. Sales, 149; 12 Enc. Pl. & Pr. 101; 105 Mo. 472; 77 Va. 770; 14 Pet. 84; 80 Ky. 155; 29 La. Ann. 206; 48 Fed. 7; 28 Texas, 636. Defects in the giving of notice are cured by confirmation. 31 Ark. 74; 47 Ark. 413; 38 Ark. 78; 13 Ark. 507; 52 Ark. 341; 50 N. W. 331; 29 Ohio St. 651; 26 Ark. 421; 54 Ark. 484; 77 Va. 470; 56 Ark. 419; 50 Ark. 188.

BATTLE, J. Harry E. Kelley instituted this suit in the Phillips Chancery Court to quiet title to certain lands. He alleged that he was the owner of them, and that they were wild and unoccupied. The following are the lands:

"Township 5 south, range 1 east: south half of section 12; all section 26; east half of east half section 27; all section 35.

"Township 5 south, range 2 east: west fractional half of southeast quarter of section 12; west half of northeast quarter of section 13; west half of southwest quarter of section 18; west half of northwest quarter of section 19; southeast quarter of section 19; north half of section 30.

"Township 6 south, range 1 east: west half of section 2; section 5.

"Township 6 south, range 1 east: west half of section 2; north half of north half of section 3; south half of section 3; all section 4.

"Township 6 south, range 1 east: north half of section 10; southeast quarter of section 12; south half of section 14.

"Township 6 south, range 1. east: southeast quarter of northwest quarter of section 5."

The defendant, the Laconia Levee District, answered, and denied that plaintiff was the owner of the lands, and claimed title thereto under a deed executed to it by the Commissioner of State Lands of this State, pursuant to an act entitled "An act to donate to the Laconia Levee Board, the Red Fork Levee Board, the Desha Levee Board, the Chicot Levee Board, and the Linwood and Auburn Levee Boards all the lands in this State within the limits of said levee districts," approved April 14, 1893, which donated to said districts all the lands of the State lying therein which are subject to taxation under the law for levee purposes, "except the sixteenth section school lands, and all the right or

interest that the State has or may have within the next three years, by reason of forfeiture for nonpayment of taxes, to any lands within the levee districts."

A decree was rendered in the suit by the terms of which plaintiff was permitted to redeem the following tracts: southwest quarter of the northwest quarter of section 5, the southeast quarter of section 12, and the south half of section 14, in township 6 south, and in range 1 east; and his complaint was dismissed for want of equity as to all the other tracts. Plaintiff paid the amount necessary to redeem in open court, and appealed from the decree as to the residue.

Appellee insists that the appeal should be dismissed because appellant accepted the benefits of the decree. But he was not stopped from appealing by the redemption. There is nothing inconsistent in the two acts. The right to the land redeemed and the right to the other tracts were not dependent on each other; and the assertion of one did not imply the waiver of the other. *Stanley* v. *Dishough,* 50 Ark. 201.

The lands in controversy were wild and unoccupied. The possession of them followed the title. It was necessary, therefore, for appellant to prove that he had title to them. He failed to show that he had title to the following lands: south half of section 12 in township 5 south, range 1 east; section 26 in township 5 south, range 1 east; section 35 in township 5 south, range 1 east; west half of section 2, township 6 south, range 1 east; south half of section 3, in township 6 south, range 1 east; north half of north half of section 3, in township 6 south, range 1 east; section 4, township 6 south, range 1 east; north half of section 10, township 6 south, range 1 east; west half of southeast quarter of section 12, township 5 south, range 2 east; west half of northeast quarter of section 13, township 5 south, range 2 east; southeast quarter of section 19, township 5 south, range 2 east; north half of section 30, township 5 south, range 2 east; southeast quarter of section 5, township 5 south, range 3 east.

The only evidence offered to show that the United States and the State of Arkansas have sold these lands is contained in written statements of the Registers of the United States Land Office and the State Land Commissioner, in which they severally say that the records in their respective offices show that certain

entries were made. They (statements) were not admissible for any purpose. The proper evidence of these facts, in the absence of the original, were copies of the records duly authenticated. *Driver* v. *Evans,* 47 Ark. 297; *Hendry* v. *Willis,* 33 Ark. 833.

The west half of southwest quarter of section 18, and the west half of northwest quarter of section 19, in township 5 south, range 2 east, were sold to the State of Arkansas under a decree of a court of competent jurisdiction rendered in proceedings under an act entitled "An act to enforce the payment of overdue taxes," approved March 12, 1881. Applicant insists that this sale is incomplete, because the commissioner who made it did not certify to the proper county clerk that the land was· sold to the State, and that the land is still subject to redemption. To sustain this contention, he cites section 12 of the "overdue tax act" of March 12, 1881, which is as follows: "In case no one shall bid at such sale the commissioner shall strike off said lands to the State, and shall certify that fact to the clerk of the county, who shall file such certificate in his office, and shall send a certified copy thereof to the Commissioner of State Lands, and also to the Auditor." But section 15 of the same act provided: "Whenever a report of such commissioner shall be confirmed, all objections to the sale and the proceedings thereunder shall be adjudicated in favor of the validity thereof." The sale of the lands to the State in this case was reported to the court by the commissioner who made it, and was confirmed. The effect of the confirmation was to complete the sale, the court having jurisdiction. The only purpose which the certificate of the commissioner to the county clerk, mentioned in section 12 of the overdue tax act, can serve was to advise him that the lands so certified belonged to the State, and were not ·taxable, and to enable him to keep correct tax books; and the object of the certificate of the county clerk to the Commissioner of State Lands was to inform him that the lands belonged to the State, and were subject to sale according to law. These certificates were not necessary in this case. The State, by special act, donated the lands to the appellee, and by act approved April 4, 1901, provided that the special act "shall be construed by the courts to be grants '*in presenti,*' and to convey to said levee districts all the right, title, interest and claim which the State of Arkansas and the respective counties had in and to said land at the date of the passage and approval of said

acts, whether said land had been properly certified to the office of the State Land Commissioner or not." The effect of these acts was to dispense with the certificate of the commissioner to the county clerk, which was intended for the State's protection, in this case, and to make unnecessary the certificate of the county clerk to the Commissioner of State Lands; the State having granted the lands to appellee.

The sale under the overdue tax act is assailed because, at a time between the dates of sale and of its confirmation, an order was entered of record which recites that the final decree did not speak the truth in the matter of the allowance of attorney's fees; and directs that attorneys named be allowed the sum of $ . . . . . . . and that all provisions of the decree inconsistent with this allowance be held null and void." Our attention has been called to no inconsistent provisions. The act conferred jurisdiction upon the court to allow, and charge a lien for, attorney's fees. It had the right to amend its record, in this respect, to make it speak the truth. If it allowed too much or too little fees, it committed an error which could have been corrected on appeal, but is binding in a collateral proceeding. A sale under an order of a court of competent jurisdiction is different from that made for nonpayment of taxes without such an order. The latter for illegal fees would be void, and the former would not be.

The east half of east half of section 27, township 5 south, range 1 east, was entered by Silas Craig in the land office of this State, and, he having died before the patent therefor was issued, the Governor, pursuant to section 37 of chapter 101 of Gould's Digest, conveyed it to his (Craig's) legal representatives. They were his heirs, who succeeded to his rights to real estate. His heirs were Junius W. Craig and Leland P. Craig, who died and left James W. his sole heir. The next link in the chain of title to this land is a deed executed by C. W. Fry, as receiver of the estate of Junius W. Craig, to William Todd, who purchased the land at a sale ordered by the Chicot Circuit Court, on the equity side thereof, in a suit therein pending wherein the creditors of the estate of Junius W. Craig were plaintiffs, and Emma J. Wright, as executrix of the last will and testament of Junius W. Craig, and as legatee, and others, were defendants. Appellee

insists that this deed has no probative force, because it is not evidence of its recitals, and there is no evidence that the Chicot Circuit Court had jurisdiction to order the sale. It is alleged that it is not evidence because the statutes do not make a receiver's deed evidence of the truth of its recitals, but they do make deeds executed by commissioners evidence of the facts therein recited. Kirby's Digest, § 760. In the deed executed by Fry he is styled receiver and commissioner. But, be this as it may, he was in fact a commissioner, and acted as such, and his deed is evidence of the facts recited therein. And it recites that the Chicot Circuit Court, on the equity side thereof, in a certain suit therein pending wherein the creditors of the estate of Junius W. Craig, deceased, were complainants and Emma J. Wright, as executrix of the last will and testament of the said Junius W. Craig, deceased, and as legatee thereunder, and others, were defendants, made a decree appointing Johnson Chapman receiver of the said estate, and directing him, after giving certain notice of sale, to sell the land last above described and other lands to the highest bidder; that Chapman gave the notice, and sold the land to William H. Todd, he being the highest bidder, and reported the sale to the circuit court, which confirmed it; that Charles W. Fry was appointed receiver of said estate by the Chicot Circuit Court in the place and stead of Chapman, and was directed, as such receiver and commissioner, to convey the land to Todd on certain conditions that were performed; and that he did so as such receiver and commissioner; and his deed was duly acknowledged and recorded. The deed of Fry being evidence of the facts therein recited, it appears that the Chicot Circuit Court by decree ordered the sale of the land. Being a court of general jurisdiction, both law and equity, the presumption in a collateral proceeding is that it had jurisdiction of the parties to, as well as the subject-matter of, the suit. *Boker* v. *Chapline*, 12 Iowa, 204; *Hunger* v. *Barlow*, 39 Iowa, 539.

The deed of Fry is, then, in connection with the deed of the State, *prima facie* evidence that Todd was the owner of the land.

Todd died. L. H. Springer was appointed administrator of his estate on August 4, 1879. Springer died. On May 30, 1893, George C. Shell was appointed by the probate court administrator

*de bonis non* of Todd's estate.  No petition for sale of realty was filed, nor order for sale was made during Springer's administration.  Shell sold the land to appellant on the 1st day of December, 1893, under an order of probate court, and reported the sale to such court, which approved and confirmed the sale, and thereafter conveyed the land to appellant.  Fourteen years expired after the letters of administration to Springer were granted before the application to the probate court for an order to sell the land to pay debts was made.  Appellee insists that this delay was unreasonable, and affected the validity of the sale.  But this contention is not true.  The delay could have been set up to defeat the sale, but cannot be used for that purpose in a collateral proceeding after the sale, when the rights of innocent parties have intervened.  It is a matter of defense, which cannot be made available after the sale.  In *James* v. *Gibson,* 73 Ark. 440, the administrator sold the land, after the order therefor had lapsed, without any authority, and the unreasonable delay in applying for an order of sale was set up against the renewal of it.  The case stood as though no order had been made, and the rights of all parties were within the protection of the court.  Besides, equitable circumstances existed which made it necessary for the court to intervene for the purpose of enforcing and protecting the rights of parties.

Appellant is entitled to a decree to quiet his title to the east half of east half of section 27, in township 5 south, range 1 east.

This cause is remanded with instructions to the court to modify its decree in accordance with this opinion.

HILL, C. J., being disqualified, did not sit in this case.

### ON REHEARING.

Opinion delivered May 20, 1905.

BATTLE, J.  The decree of this court in this case is amended so as to remand the cause with instruction to the court to ascertain the taxes for which east half of east half of section 27, township 5 south, range 1 east, was forfeited; and also all taxes which would have accrued upon it, had it remained upon the tax books from date of forfeiture to date of redemption, and to permit Kelley to redeem by paying such taxes to appellee; to ascertain such taxes and enforce the payment thereof to appellee in

the manner provided by "An act to provide for confirmation and quieting of title to land as granted by the State of Arkansas to the Laconia Levee District, the Desha Levee District, and the Red Fork Levee District," approved April 4, 1901, § 7, Acts 1901, page 131.