COULTER *v.* O'KELLY.

5-1026                                            295 S. W. 2d 753

Opinion delivered October 29, 1956.

[Rehearing denied December 17, 1956.]

*Leffel Gentry* and *U. A. Gentry,* for appellant.

*McMillan & McMillan, J. R. Wilson* and *Thomas E. Sparkes,* for appellee.

LEE SEAMSTER, Chief Justice. The appellants, Murray Whitfield Coulter and George Prothro Coulter, filed this action in the Dallas Chancery Court on April 13, 1954, to quiet title to certain lands located in Dallas County, Arkansas. Certain stipulations were introduced in the record. At the close of appellants' testimony and

upon motion of appellees, the trial court dismissed the complaint for want of equity. This appeal follows.

The appellants alleged in their complaint that they owned three separate 80 acre tracts of land located in different sections of Dallas County. The appellees were all made defendants to the complaint and were called upon to show what interest, if any, they claimed in the lands. The appellees, W. P. Sturgis, C. F. Sturgis, L. Weems Trussell, J. R. Wilson and Mabel I. Wilson, his wife, all filed answers and cross-complaints.

The above named appellees contended as their sources of title, that they owned two of the 80 acre tracts of land by reason of deeds from the State Land Commissioner and payment of taxes for 17 years. The Land Commissioner issued his deeds on the strength of a tax title due to the fact that the taxes were not paid on said tracts in the year 1933, and the lands were sold to the State as delinquent tax lands.

The appellees further contend, as to one of the above mentioned 80 acre tracts, that E. W. Prothro conveyed the land to Frank Cathey and they were successors in title to the said Frank Cathey.

The appellants answered the cross-complaints and admitted that said appellees, or their predecessors in title, had acquired tax deeds from the State Land Commissioner. However, the appellants contend that the sale of the lands for taxes was void for several reasons set out in appellants' pleading.

The other appellees filed separate answers setting up the defense that they were innocent purchasers for value of the lands and that they were in actual possession of said lands. They also claimed that they and their predecessors in title had been in open, notorious, continuous and peaceable possession of said lands for more than fifteen years and had made valuable improvements upon the respective tracts of land.

The appellants introduced in evidence three deeds of record. Two deeds were from W. A. G. Woodward, Trustee in Bankruptcy of the Estate of Harris Brothers, to

E. W. Prothro, as grantee. In these two deeds the grantor conveyed "all my right, title and interest as such trustee (including all rights vested in E. T. Hays, Trustee, under a deed of trust dated April 15, 1931, executed by John R. Harris, Neil M. Harris, W. L. Harris, Versa Sue Harris, Sweet Harris, and John R. Harris, as guardian of C. C. Harris, and recorded in Record Book Vol. 'G. G.' page 418, of the records of Calhoun County, Arkansas and free and clear of any claim on the part of the estate of John R. Harris, bankrupt)." The first of these deeds was dated August 17, 1933, and filed for record in Dallas County on September 5, 1933; the second deed was dated August 28, 1933 and filed for record in Dallas County on October 29, 1955.

The third deed was from E. W. Prothro, conveying the above mentioned lands to the appellants. This deed was dated August 28, 1933, and was filed for record in Dallas County on October 29, 1955, after the commencement of this suit. Each of the three deeds mentioned above, also conveyed other lands not here in question. None of the deeds mentioned contained a warranty of title.

There was also introduced into the record the birth certificates of the two appellants, for the purpose of showing that the suit had been brought within the time provided by law after appellants had reached their majority.

The record also reveals that the parties stipulated to the following:

(1) W. P. Sturgis and C. F. Sturgis acquired the North Half of the Northeast Quarter . . . by deed from L. Weems Trussell now of record in Book 33, page 292 and paid therefor the sum of $2,400 (Tr. 100).

(2) W. P. Sturgis and C. F. Sturgis acquired the South Half of the Southeast Quarter from J. R. Wilson by deed of record in Book 20, page 5 and paid therefor the sum of $750 (Tr. 101).

(3) The defendants Sturgis acquired the property for a valuable consideration and without notice either

actual or constructive of the claims of the plaintiffs or either of them.

(4) The record of payment of taxes shown by the certificate of Ed Baker and which shows the payment of taxes for the years 1937 through 1953, inclusive, by Sturgis Brothers or their predecessor in title (Tr. 98 and 99).

(5) It is stipulated between plaintiffs' attorney and attorney for defendants John O'Kelly and Mary O'Kelly and Bruce McAlister and Grace McAlister that these named defendants are *bona fide* purchasers of the West Half of the Northwest Quarter, Section 20, Township 10 South, Range 14 West in Dallas County, Arkansas, are now in possession of this tract of land, claiming to be the owners of the same.

The records set out in the stipulations were introduced in evidence. At the close of appellants' testimony and upon motion of appellees, the trial court dismissed the cause for want of equity.

For reversal, the appellants contend:

"1.  Plaintiffs made out a *prima facie* case;

"2.  The mere prior recording of the deeds to the defendants without showing that the grantors had title and the right to convey would not, within itself, give priority over plaintiffs' holding under an unrecorded deed from the rightful owner;

"3.  The burden was not on plaintiffs to prove that the deed from E. W. Prothro to Frank Cathey was a forgery until the defendants put the deed in evidence. When, and if, the deed was introduced, the plaintiffs had the right to rebut the evidence by showing the invalidity of the deed."

The stipulations admit that defendants are *bona fide* purchasers of the tracts of land; that defendants O'Kelly and McAlister are in possession of their tract of land; and, that the Sturgises and predecessors in title had paid taxes, for more than 15 years, on the wild and unimproved tracts of land. This makes a presumption of

law that the Sturgises have a title to the land. See Sec. 37-103, Ark. Stats., 1947.

The above mentioned statute was upheld in the case of *Schmeltzer* v. *Scheid,* 203 Ark. 274, 157 S. W. 2d 193. In this case the title was quieted in Scheid due to the fact that he had paid the taxes on wild and unimproved land for more than 15 years, as against the record owners of the land.

The appellants contend that since they were minors during the time appellees acquired their title and also since they brought their suit within three years after attaining their majority, that they have a right to maintain this suit. This contention would be correct if appellants introduce sufficient proof to show they have title to the land.

The appellants further contend that had the appellees introduced the Cathey deed, they were prepared to show the deed was a forgery. Also, that had appellees introduced their tax deed, appellants were prepared to show that said deeds were void.

The stipulations admit that appellees have such a title to the lands so as to make this case an adversary suit, since it shows that appellees are *bona fide* purchasers and in possession, or have paid the taxes on the wild and unimproved land for more than 15 years. The law is well settled in this state, that appellants would have to recover on the strength of their own title, and not on the weakness of appellees' title. *Greer* v. *Vaughan,* 128 Ark. 331, 194 S. W. 232; *McClelland* v. *McClelland,* 219 Ark. 255, 241 S. W. 2d 264; *Gibbs* v. *Pace,* 207 Ark. 199, 179 S. W. 2d 690; *Sanders* v. *Baker,* 217 Ark. 521, 231 S. W. 2d 106; *Chavis* v. *Henry,* 205 Ark. 163, 168 S. W. 2d 610; *Allen* v. *Phillips,* 87 Ark. 185, 112 S. W. 403; *Cook* v. *Ziff Colored Masonic Lodge No.* 119, 80 Ark. 31, 96 S. W. 618.

To sustain their case, the appellants, as plaintiffs, introduced in evidence a deed to the tracts of land from E. W. Prothro to appellants and deeds to E. W. Prothro from the Trustee in Bankruptcy of the Harris bankrupt

estate. There is no evidence that appellants, or their predecessors in title, owned the property. Neither is there evidence that any of them were ever in possession of any of the tracts of land involved herein. There is a total lack of evidence that appellants, or their predecessors in title, ever paid any taxes on any of said tracts of land. There was a complete lack of action, upon the part of appellants or their predecessors in title, to demonstrate their ownership of the tracts of land. This court has held this to be insufficient to justify a decree quieting title in the petitioners. *Rushing* v. *Thompson,* 208 Ark. 248, 185 S. W. 2d 941.

In the early case of *Wilson* v. *Spring,* 38 Ark. 181, this court said:

"But we are unable to see how a purchaser of lands, under an execution sale, or attachment, against Constant A. Wilson, and without any showing of how said Constant himself acquired title, can make a *prima facie* case in favor of one who must succeed upon the strength of his own title, against one who claims from a different source. A deed gives *color* of title, but is not even *prima facie evidence* of title against a stranger without showing title in the grantor, and several successive transfers cannot alter the case. Nor can lapse of time, until aided by the statute of limitations. There is absolutely no proof at all of title in Constant A. Wilson, to the lands in 29 at the time of the levy and sale to Clark." This case was cited with approval in *Gingles* v. *Rogers,* 206 Ark. 915, 175 S. W. 2d 192. See also *Sanders* v. *Boone,* 154 Ark. 237, 242 S. W. 66, 33 A. L. R. 461 where petitioner testified he purchased land from a certain individual and received a deed to the land, but he did not show that his vendor was the owner of the land nor had any interest therein. The court in this case reversed a decree quieting title in the petitioner.

To be entitled to a decree quieting title, in an adversary suit, the plaintiff must deraign title from the government or from someone who is shown to be owner of the land by possession and/or payment of taxes. In the case of wild and unimproved land, there must be shown

a payment of taxes. *Chavis* v. *Henry*, 205 Ark. 163, 168 S. W. 2d 610, and cases there cited. See also *Chavis* v. *Taylor and Co.*, 211 Ark. 252, 200 S. W. 2d 507.

As to the 80 acre tract of land claimed by appellees under the Cathey deed, appellants contend that they are not required to deraign title further than to Prothro, the common source of title. That contention would be correct if appellees had relied only on the title obtained from Cathey. However, the appellees also claimed title by reason of a tax title and by payment of taxes on the wild and unimproved lands for more than 15 years. Since each of such claims is not derived from a common source of title, the appellants still have to prove title in themselves, by deraigning title to the government or to some one shown to have been the owner of the land. This question was determined by this court in *Eickhoff* v. *Scott*, 137 Ark. 170, 208 S. W. 421, where we held that if the defendant had shown a title independent of the common source of title, the plaintiff would have to recover on the strength of his own title.

In the case of *Wood* v. *Freeman-Smith Lumber Company*, 109 Ark. 499, 160 S. W. 396, this court held:

"Whenever plaintiff and defendant both deraign title from the same source, the plaintiff usually need not go behind this source to prove his title. * * * Where the defendant can show a better title outstanding and has acquired it, the rule ceases to apply. Where the defendant is allowed to impeach the common source of title, he must establish that he himself has acquired a superior title, and, except to this extent, he is not permitted to invoke the rule that the defendant can defeat the plaintiff by showing a better title in a third person."

The appellants also insist that by their pleadings they denied the appellees' assertion that a tax deed had been issued. It is accordingly argued that in the orderly course of proof it was sufficient for the appellants to deraign their title to the common source and that it was not incumbent upon the appellants to attack the validity of the tax title until that title had first been established by the appellees. We are not convinced, however, that

the existence of the tax deed was denied. In the appellants' first answer to the appellees' cross-complaint the appellants unqualifiedly admitted the issuance of the tax deed. After a number of amendments to the various cross-complaints had been filed the appellants filed what is styled an "answer to cross-complaint." In this pleading the appellants denied "each and every allegation of said cross-complaint and of each of the amendments thereto." This pleading was filed long after the time for answering the cross-complaint and without leave of court. It does not purport to be in substitution for the original answer to the cross-complaint. In these circumstances we do not think that the belated general denial should be treated as a withdrawal of the previous admission that the tax deed had been issued. Thus the appellants are in the position of having admitted that the appellees had a title in addition to the common source, and it was necessary for them to prove the invalidity of that additional title in order that *prima facie* title in themselves would be sufficient.

Since the appellants failed to prove title in themselves, the decree of the trial court in dismissing appellants' cause of action is affirmed.