MILLER v. DARGAN.

Opinion delivered November 4, 1918.

1. SPECIFIC PERFORMANCE—TIME OF PERFORMANCE—TENDER.—Where a vendor agreed to postpone the date for consummation of the deal, he can not plead a failure of the purchaser to tender per-

formance within the time originally specified as a defense in a suit to compel specific performance.

2. STATUTE OF FRAUDS—DESCRIPTION OF LAND.—A written contract for the sale of land, describing it as the plantation owned by the vendors on Carson Lake and containing 520 acres, is a sufficient description where extrinsic evidence identifies the plantation intended to be sold.

3. SPECIFIC PERFORMANCE—WHEN ENFORCED.—Where the vendors agreed to convey their plantation on Carson Lake containing 520 acres, and extrinsic evidence identified the plantation, but it appeared that there were 560 acres in the plantation, and there was a verbal understanding that a certain forty-acre tract was to be omitted, which was identified by the abstract of title furnished by the vendors and accepted by the purchaser, the contract will be enforced as the parties understood it.

Appeal from Mississippi Chancery Court, Osceola District; *Archer Wheatley,* Chancellor; affirmed.

*Virgil Green* and *Hughes & Hughes,* for appellant.

1. There is no written agreement to convey the lands. The contract is within the statute of frauds. Kirby & Castle's Digest, § 3982. It does not contain a description of the property to be conveyed. Browne, Stat. Frauds (5 Ed.) § 385; 85 Ark. 1; note to 11 L. R. A. 98; 72 Ark. 496. No effort here is made to describe the property. No lands are identified by the description. The bad description is accentuated by the circumstance that the oral evidence shows that forty acres were to be omitted; which forty is not shown. The parties differ. The description is vague and uncertain so that specific performance cannot be decreed.

2. Defendants prepared and signed a deed, but it was retained and never acknowledged or *delivered.* No memorandum in writing is sufficient to take the case out of the statute unless *delivered* to the obligee. Browne, Stat. Frauds, § 354 b; 1 Devlin on Real Estate, 421; 16 Minn. 172; 81 Ind. 192; 48 Iowa 99; 67 Mass. 410; 158 *Id.* 113; 31 Miss. 17; 43 N. Y. 550; 116 Pa. St. 329; 57 Atl. 81; 24 Neb. 83; 26 N. J. Eq. 316; 76 Hun (N. Y.) 419; 108 Tenn. 398; 102 Ark. 377; 16 Minn. 172.

3. The abstracts could not cure a defective description. They were not a part of the transaction, but were memoranda of title prepared by some third party. Extrinsic documents cannot be resorted to in aid of a defective description, unless the contract refers to them for the description. 29 R. I. 230; 18 L. R. A. (N. S.) 616 note; 144 Mass. 465. The abstracts were delivered in pursuance of the contract, but were not part thereof. The contract calls for abstracts, but it is not possible otherwise than by parol evidence to show that these are the abstracts furnished in pursuance of the contract. The documents on their face do not appear to be connected with each other. The connection must appear upon the face of the papers. Browne on Stat. Frauds, § 348, 30 Minn. 389; 122 Ind. 574; 123 Pa. 298.

4. The difficulty because of non-compliance with the statute of frauds is recognized in the amended complaint. It prays reformation as to the description. No mistake is alleged, and there is no explanation. The mistake, if any, must be alleged. 123 Ark. 451. The oral evidence leaves the true description in doubt. There is uncertainty and the proof must be clear and decisive. 71 Ark. 614; 126 *Id*. 251. While executed contracts may be reformed and enforced, executory contracts within the statute of frauds will not be. 2 Wh. & Tudor Lead Cas. in Eq. 920; 102 Mass. 24; 89 Atl. 533; 92 *Id*. 96; L. R. A. 1917 A 563 and note 536; L. R. A. 1917 A 596; 15 Mich. 18; 25 Am. Dec. 205; 5 L. R. A. 810; 48 Am. Dec. 133; 23 L. R. A. (N. S.) 1197; 123 Wis. 510; 39 Fed. 353; 41 Ark. 495; 17 Atl. 910; 33 N. E. 434; 120 N. Y. S. 486; 2 McCord Eq. 112; 234 Pa. 100; 83 Atl. 54. See also 16 Idaho 133; 100 Pac. 1052; L. R. A. 1917 A 563; 10 Me. 80; 15 Mich. 18; 106 *Id*. 143; 104 N. C. 16; 5 L. R. A. 810; 85 Ark. 1; 41 *Id*. 495; 19 Conn. 63; 48 Am. Dec. 133, etc.

*Lamb & Rhodes,* for appellee.

1. The land is not specifically described in the contract. But this is cured by the action of the parties in submitting the abstracts of title to the particular lands

described in the complaint, and no contention is made that that was not the land described as the plantation on Carson Lake. The amendment to the complaint alleges that this is the actual land. The description is sufficient. 68 Ark. 547; 30 *Id.* 548; 85 Ark. 1-4; 123 Ga. 415; 103 Ark. 550; 78 *Id.* 158; 91 *Id.* 468. There can be no dispute as to the land agreed upon. 85 Ark. 1; 80 *Id.* 209; 79 *Id.* 203; 95 U. S. 200. The contract furnishes the key, and when the abstracts were delivered the contract was complete, definite and certain. 80 Ark. 209; 79 *Id.* 203; 95 U. S. 200. There was no disagreement as to what land was sold. Appellants owned no other lands than the plantation on Carson Lake.

2. The contract was not within the statute of frauds. All defects were cured by the abstracts and testimony. The proof is clear and decisive. Bishop on Contracts, § 708; 85 Ark. 442. See also 3 N. J. Eq. 60; 53 *Id.* 588; L. R. A. 1917 A 563.

3. All executory contracts may be reformed and enforced specifically. 19 W. Va. 240; 42 Minn. 440; 7 Ga. 38; 137 Iowa, 378; 163 Ky. 729; 22 S. D. 293; 45 Cal. 78; L. R. A. 1917 A 591; 96 Am. Dec. 671; 34 Am. St. 134; 23 Ark. 422; 85 *Id.* 1-4; 2 Pom. Eq. Rem., § 677.

4. The lands were sufficiently described. 12 Fla. 348. They were identified and made certain. 18 Mich. 367; 41 Wis. 223; 164 Fed. 107. Where the contract is ambiguous the court will follow the interpretation placed on it by the parties and carry out their intention. 83 Neb. 441; 131 Am. St. 629; 48 Mo. 325; 81 Am. Rep. 104; 6 Cr. 237; 3 Greenleaf 393; 3 Elliott on Cont., § 2293; 15 Johns 471; Beach Mod. Eq. Jur., § § 581-2-3; 1 Pom. Eq. Jur., § § 365-7-8; 4 *Id.* § 1334.

5. Defendants breached their contract, and no tender was required until they complied with their contract to furnish an abstract. 88 Ark. 472; 93 *Id.* 472; 43 *Id.* 184; 102 *Id.* 152; 38 *Id.* 174. See also 93 *Id.* 195.

6. All the papers connected with the transaction must be construed together. 121 Am. St. 357-9; 139 U. S. 210; 22 Oh. St. 62; 20 So. 123; 29 A. & E. Enc. 850-1.

7. The case was taken out of the statute of frauds. 30 Ark. 250; 69 *Id.* 513; 52 *Id.* 207; 48 *Id.* 535; 141 Pac. 800; 20 Cyc. 308. The contract was fully complied with by appellee.

McCULLOCH, C. J. This is an action instituted in the chancery court of Mississippi County to compel specific performance of a contract to sell and convey real estate. The defendants owned the lands in controversy, which constituted a plantation on Carson Lake in Mississippi County, and there is in the complaint an accurate description of the several tracts according to the plats of the government surveys. Defendants listed the lands with certain real estate brokers for sale, and the latter negotiated a sale to the plaintiff at the price of $110 per acre. There were 561½ acres in the whole tract, but it appears from the testimony in the present case that there was a certain tract containing 40 acres that was to be excluded from the sale. The parties entered into a written contract specifying the terms of sale, and the clause of the contract containing the description of the lands to be sold reads as follows:

"That the parties of the first part have sold, and do hereby agree and bind themselves to convey, to the said Dargan their plantation located on Carson Lake in the Osceola District of Mississippi County, Arkansas, containing 520 acres, more or less, the actual amount to be determined by survey at the expense of the said Dargan upon the terms and conditions herein stated."

The date of the written contract was August 13, 1917, and it was further provided therein that the purchaser should pay $1,000 as the initial payment upon the execution of the contract, and should also pay the sum of $5,000 on or before noon of October 20, 1917, whereupon the vendors were to execute a deed conveying the lands to the purchaser, and notes evidencing the deferred payments were also to be executed by the purchaser. There was also a stipulation that the vendors were to furnish an abstract of title.

It appears from the evidence that the plaintiff made the initial payment of $1,000 at the time of the execution of the contract, and that a short time thereafter the defendants furnished the plaintiff's attorney an abstract of title. Certain defects were pointed out in the title to some of the tracts, and suggestions were made by plaintiff's attorney as to how those defects might be cured. The abstract of title thus furnished did not embrace a certain forty-acre tract which the defendants owned, but which the plaintiff now contends is the tract which was not to be included in the sale. The testimony adduced by plaintiff tends to show that just prior to October 20, plaintiff was preparing to have the land surveyed pursuant to the contract for the purpose of ascertaining the exact acreage, and his attorney went to the defendants to ascertain whether or not the title had been perfected in accordance with his suggestion. The attorney offered to make the payment of $5,000 for the plaintiff, but one of the defendants with whom he was negotiating instructed him to place the money in bank so as to be ready to pay over when the defects in the title were cured. The testimony also shows that there was an actual tender of the sum of $5,000 before October 20, but that defendants refused to accept it and repudiated the contract.

There was no controversy between the parties at that time as to what particular tract of forty acres should be omitted from the sale, but defendants based their refusal to execute the deed on the ground that the plaintiff had not executed and tendered his notes for the deferred payments with a mortgage to secure the same. The testimony of the defendants is to the effect that there was no agreement for the postponement of the date for the consummation of sale, and that they perfected the defects in the title, but that the plaintiff was not ready to comply with the contract on or before October 20, 1917, as specified in the contract. There is a sharp conflict in the testimony as to whether or not the plaintiff made a tender of performance within the time and whether or not there was an agreement to postpone the date until certain defects were

cured, but we are of the opinion that the finding of the chancellor on those issues is not against the preponderance of the testimony. If, as the testimony of the plaintiff tends to show, the defendants agreed to postpone the date for the consummation of the deal, and thus misled the plaintiff and prevented him from executing the notes and mortgage in time for delivery on the day specified, they cannot now successfully plead a failure on the part of the plaintiff to tender performance within the time specified.

The question most seriously pressed upon our consideration by learned counsel for the defendants is that the contract does not contain a sufficient description of the land which was the subject of the trade, and that for this reason it is void under the statute of frauds and cannot be reformed or enforced. They contend that not only is the description in the face of the contract insufficient, but that also the forty-acre tract which was to be omitted was not described, and that that brings the contract clearly within the operation of the statute of frauds.

The lands are described in the contract executed by the defendants as "their plantation located on Carson Lake in the Osceola District of Mississippi County, Arkansas, containing 520 acres, more or less, the actual amount to be determined by survey at the expense of the said Dargan." This is a good description where it can, as has been done in this case, be shown what constitutes the plantation owned by defendants on Carson Lake. The rule is that the writing "must disclose a description which is in itself definite and certain, or one which is capable of being made certain by other proof, the contract itself furnishing the key by which the property may be identified." *Fordyce Lumber Co.* v. *Wallace*, 85 Ark. 1. "A description which" says Mr. Beach, "can be made certain by proof of an extrinsic fact referred to in the agreement is sufficient." Beach's Modern Equity Jurisprudence, Sec. 583. The cases are very numerous holding that descriptions similar to the one found in the present contract are sufficient. *Jackson* v. *Barringer*, 15 Johns. 471; *Hur-*

*ley* v. *Brown,* 98 Mass. 545; *Allen* v. *Kitchen,* L. R. A. 1917 A, 563, and case note.

The proof is sufficient to identify these lands as the plantation owned by the defendants on Carson Lake, so as to come within the descriptive words employed in the contract. It shows that the defendants owned a plantation on Carson Lake, and, since the contract describes the lands in those words, it is sufficient to constitute a valid contract for the sale of all the lands which can be shown by extrinsic evidence to fall within that description. We have a case, therefore, where the contract on its face is not within the operation of the statute of frauds. It is a valid and enforceable contract as to all the lands described. The fact that there was a verbal understanding between the parties that a certain forty-acre tract was to be omitted does not defeat the contract, and unless the contract can be reformed, and is reformed, so as to express the real agreement of the parties, then it must be enforced as written. But there is no contention by either of the parties that anything was omitted from the written contract which they intended to put into it. Therefore there was no mistake in the writing itself to be corrected. The parties themselves concede that it was written as they intended, but the contention is, and both parties admit it, that there was a verbal understanding that forty acres was to be omitted from the trade. Both parties, therefore, were bound by the letter of the contract, but when it came to its performance the defendants furnished the plaintiff an abstract of title omitting the forty-acre tract which is shown to be the one which the parties agreed to leave out of the trade. This was accepted by the plaintiff as constituting a furnishing of an abstract of title to the lands which were the subject of the sale, and the lands thus described, with this particular forty acres ómitted, were what the parties treated as the lands falling within the description used in the contract. Conceding that the omitted forty-acre tract was a part of the Carson Lake plantation so as to bring it within the descriptive words used in the contract, yet the con-

duct of both parties in agreeing to an abstract of title which omitted this tract constituted an identification of the lands as those which fell within the descriptive words. If defendants meant to insist upon the plaintiff taking all of the lands, as they had a right to do under the letter of the contract itself, they should have done so at a time when it was possible for the plaintiff to tender performance, but, instead of doing that, they furnished to the plaintiff an abstract of title to the lands which were identified as those coming within the contract, and the plaintiff offered to comply with the contract within the time specified. To permit the defendants at this time to take advantage of the failure of the plaintiff to tender his acceptance of all the lands owned by the defendants which fell within the descriptive words of the contract would be to allow them to take advantage of their own wrong, and would constitute a fraud upon the rights of the plaintiff. We have often said that "it is a settled doctrine of equity never to lend its aid to one who invokes it for the purpose of perpetrating a fraud." *Bazemore* v. *Mullins,* 52 Ark. 207; *Conley* v. *Johnson,* 69 Ark. 513. The contract, therefore, needs no reformation, for it is complete upon its face, and can be enforced by compelling the defendants to perform it by conveying the lands which the proof shows the parties themselves treated as the particular tracts which fell within the description.

It is unnecessary for us to determine whether or not the omitted forty-acre tract was really a part of the plantation, for the parties themselves, in the progress of consummating the deal and performing the terms of the contract, treated this particular forty acres as not being a part of the plantation, and they are both now bound by that treatment of the subject-matter of the contract.

Our conclusion is that the chancellor was correct in compelling the defendants to perform the contract, and the decree is therefore affirmed.